UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN MCKAY,<br><br>   Plaintiff,<br><br> v.<br><br>BOARD OF TRUSTEES OF THE BAKERY DRIVERS AND SALESMEN LOCAL 194 PENSION FUND,<br><br>   Defendant. | Civ. No. 2:17-02193<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

  Plaintiff John McKay brings this action against the Board of Trustees of the Bakery Drivers and Salesmen Local 194 Pension Fund ("Defendant"), alleging a violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, in connection with Defendant's suspension of Plaintiff's pension benefit. This matter comes before the Court on the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendant's motion is **DENIED** and Plaintiff's motion is **GRANTED**.

  I.  **BACKGROUND**

  Plaintiff is a participant in the Bakery Drivers and Salesmen Local 194 and Industry Pension Fund ("Pension Fund"). *See* Pl.'s Rule 56.1 Statement of Material Facts ("Pl.'s Statement.") ¶ 1, ECF No. 10-1. The Pension Fund "is a multiemployer/single union defined benefit pension fund" administered by a board of trustees ("Defendant"), which is comprised of management and union representatives with equal decision-making authority. Def.'s Rule 56.1 Statement of Material Facts ("Def.'s Statement") ¶¶ 1–2, ECF No. 13. The following facts are undisputed.

  Beginning in 1988, Plaintiff worked as a Route Salesman for the Wonder Bread Baking Company ("Wonder Bread") at its New Jersey facility until the its closure in June 2013. *See* Pl.'s Statement at ¶¶ 2–3. In April 2013, roughly three months prior to the facility's closure, Plaintiff started working for the Kellogg Company ("Kellogg")

1

approximately 10 hours per week as a Merchandiser. *Id.* at ¶ 3; *see* Aff. of G. Prezioso ("Prezioso Aff."), Bates No. 43.[1] After his termination as a Route Salesman, Plaintiff applied for and was awarded a monthly pension of $1,249.00. Pl.'s Statement at ¶ 4. Born in 1957, Plaintiff had not reached the normal retirement age of 65 at the time of his pension application. Def.'s Statement at ¶ 17. Plaintiff, therefore, applied for an Early Retirement Benefit under the Pension Fund. *Id.* Plaintiff did not disclose his employment as a Merchandiser on his pension application. *Id.* at ¶ 21.

On October 17, 2016, Plaintiff submitted a certification and employment verification to Defendant, in which he revealed his employment with Kellogg. *Id.* at ¶¶ 24–25. On December 4, 2016, Defendant determined that Plaintiff engaged in disqualifying employment under the Pension Fund rules (the "Rules"). *Id.* at ¶ 39. The Rules define "disqualifying employment" as "employment with a Contributing Employer; or self-employment in the same or related business as any Contributing Employer; or employment or self-employment in any business which is or may be under the jurisdiction of the Union." *See* Prezioso Aff. at 95.

In a letter dated December 19, 2016, Defendant informed Plaintiff that his monthly pension benefit was being permanently suspended due to his violation of the Rules and that he further owed $34,972.00 in benefits paid for which he was not eligible. *See id.* at 156. Specifically, Defendant stated, "Since the Kellogg Company is in the same or related business as other contributing employers to the Plan, your current employment is disqualifying employment under the terms of the Plan." *Id.*

Plaintiff filed a written appeal, in which he argued that his employment did not meet any of the three prohibitions. *See id.* at 170–72. Plaintiff outlined the differences between his Kellogg employment and his Wonder Bread employment, including the use of his own car, an hourly wage, no sales responsibility and the absence of benefits. *Id.* at 171. Nonetheless, on March 8, 2017, Defendant denied Plaintiff's appeal, finding that "none of the materials provided by [Plaintiff] had addressed the application of the Plan's suspension rules or the basis of the Plan's initial suspension [letter] . . . ." *See id.* at 180. Defendant again stated that Plaintiff engaged in disqualifying employment because "delivering food to retail establishments is work that is within the jurisdiction of the Union." *See id.* at 182.

The parties now cross-move for summary judgment. Plaintiff argues first that Defendant's suspension violates § 1053(a)(3)(B)(ii) of ERISA because Plaintiff's Kellogg employment was not in the same industry as his Wonder Bread employment and he was not employed in the same "trade or craft." *See* Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") 4–6, ECF No. 10-2. Second, Plaintiff argues that Defendant misapplied the meaning of "disqualifying employment" to Plaintiff's Kellogg employment because nothing in the administrative record establishes that Plaintiff delivered food to

---

[1] Hereinafter, all references to page numbers in the Prezioso Affidavit refer to Bates numbers found on the bottom right hand corner of the pages.

retail establishments on behalf of Kellogg.  *See id*. at 7.  Plaintiff further contends that Kellogg is not in the same business as Wonder Bread because it does not make and sell bread.  *Id*.

Defendant argues that judicial review of its decision to suspend Plaintiff's pension is entitled to an abuse of discretion or "arbitrary and capricious" standard.  *See* Def.'s Br. in Supp. of Mot. for Summ. J. ("Def.'s Br.") 9–14, ECF No. 9-1.  Defendant asserts that the Rules provide for "the grant of absolute and discretionary power to the Trustees over benefit and eligibility determinations."  *Id*. at 9.  Consequently, according to Defendant, the Court must give deference to Defendant's interpretation of the Rules and enforcement thereof where such enforcement is reasonable.  *See id*. at 11–14.  Accordingly, Defendant's decision here is entitled to deference because "it was deliberate, rational and reasonable, and based upon the substantial evidence in the record."  *See id*. at 16–20.  Both parties filed oppositions to their adversary's motion, which the Court will address below as necessary.  *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), ECF No. 14; Def.'s Resp. in Opp'n to Summ. J. Mot. (" Def.'s Opp'n"), ECF No. 16.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp*., 901 F.2d 335, 340 (3d Cir. 1990).  A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party.  *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).  "When confronted with cross-motions for summary judgment, the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard."  *Marciniak v. Prudential Fin. Ins. Co. of Am.*, 184 F. App'x 266, 270 (3d Cir. 2006).

## III.  DISCUSSION

The Court will first address Defendant's motion because its argument concerning the appropriate standard of review requires correction.  As an initial matter, the Court notes that the essence of the dispute is the meaning of "disqualifying employment" as defined under Section 6.10(a)(i) of the Rules.  *See* Prezioso Aff. at 95.  Ultimately, the Court finds that Defendant's position that Plaintiff's Kellogg employment disqualifies him from his pension benefit is unsupported by the administrative record.  The Court further finds that Defendant abused its discretion in suspending Plaintiff's benefit and grants summary judgment for Plaintiff.

### A. Defendant's Motion for Summary Judgment

Defendant correctly identifies that the Rules provide it with discretionary power over benefit and eligibility determinations. The Rules state, "The Trustees shall be the sole judges of the standard of proof required in any case and of the application and interpretation of this Plan, and the decisions of the Trustees shall be final and binding on all parties." Prezioso Aff. at 85; *see also* Def.'s Br. at 9–10. Defendant argues that the law requires this Court to apply an "arbitrary and capricious standard of review in a circumstance where the Trustees have been granted such absolute discretionary authority concerning interpretation and determination of benefits eligibility issues which arise pursuant to the Plan." *See* Def.'s Br. at 10. Accordingly, under this standard, "a court may overturn a decision of the Trustees and/or plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id*. at 11 (quotation omitted).

> i. The appropriate standard of review is one of deference but requires a multi-factorial analysis where, as here, a conflict of interest exists.

Defendant is correct that courts apply a deferential standard of review to benefit denial determinations where the pension plan provides the administrator with the authority to determine eligibility. *See Dowling v. Pension Plan for Salaried Emps. of Union Pac. Corp. & Affiliates*, 871 F.3d 239, 245 (3d Cir. 2017). "In such circumstances, [courts] will not set aside the administrator's interpretations of unambiguous plan language as long as those interpretations are reasonably consistent with the plan's text, and [courts] will only disturb the administrator's interpretations of ambiguous plan language when those interpretations are arbitrary and capricious." *Id*. (internal quotations and citations omitted).

Defendant omits a critical factor in the Court's analysis: a determination as to whether a conflict of interest exists. Defendant cites to *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111–12 (1989), as the "seminal" case on point; however, the Supreme Court has since expounded upon that decision in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). In *Glenn*, the Supreme Court clarified that a conflict of interest exists "where it is the employer that both funds the plan and evaluates the claims." *See* 554 U.S. at 112. When a conflict exists, courts employ a multi-factorial analysis of a benefit denial decision, of which the conflict is one factor. *See id*. at 117. "In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Id*.

The Eastern District of Pennsylvania recently identified that "[t]here appears to be a circuit split regarding whether multiemployer plans [such as Defendant's] are conflicted within the meaning of *Glenn*, and the Third Circuit has not yet spoken on this issue." *Hansen v. Int'l Painters & Allied Trades Indus. Pension Plan*, No. 16-cv-5028, 2017 WL 4539217, at *5 (E.D. Pa. Oct. 11, 2017) (italics added). On the one hand, the Second Circuit has established a two-step inquiry under *Glenn* and applied it to multiemployer plans. First, a court must decide "whether the 'plan administrator both evaluates claims

4

for benefits and pays benefits claims.'" *See Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F. 3d 133, 138 (2d Cir. 2010) (quoting *Glenn*, 554 U.S. at 112). Second, if a conflict exists, "the court goes on to determine how heavily to weight the conflict of interest thus identified, considering such circumstances as whether procedural safeguards are in place that abate the risk, 'perhaps to the vanishing point.'" *Id*. (quoting *Glenn*, 554 U.S. at 117). Notably, the Second Circuit found "[t]hat the board is (by requirement of statute) evenly balanced between union and employer does not negate the conflict" and "that the administrator is here a trust, rather than the employer itself or a third-party for-profit institution, does not control." *Id*. at 139.

On the other hand, the Ninth Circuit arrived at the polar opposite conclusion, finding that the trustees of multiemployer plans have no economic incentive to grant or deny benefits. *See Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trs.*, 588 F.3d 641, 648 (9th Cir. 2009). The Seventh Circuit has held similarly, finding that a multi-employer plan with an equal number of union and employer representatives "had no discernible incentive to rule against an applicant." *See Tompkins v. Cent. Laborers' Pension Fund*, 712 F. 3d 995, 1000–01 (7th Cir. 2013) (quotation and citation omitted). The Ninth and Seventh Circuits' analyses assume that the only potential conflict of interest for trustees of a multiemployer plan is economic in nature—*i.e.*, the reduction of plan funds through the payment of benefit claims. The case at bar presents a different type of conflict, one of competing interests between unionized and non-unionized laborers. For this reason, the Court agrees with the Eastern District of Pennsylvania that the Second Circuit's reasoning is more persuasive and applies its two-step inquiry to the instant case. *See Glenn*, 554 U.S. at 112 (finding "the fact that a plan administrator both evaluates claims for benefits and pays benefits claims creates the kind of 'conflict of interest' to which *Firestone's* fourth principle refers"); *see also Hansen*, 2017 WL 4539217, at *6.

  ii. <u>Defendant is conflicted against benefit recipients who undertake reemployment with "low wage paying, non-union companies."</u>

Defendant easily satisfies the first step in the Second Circuit's two-step inquiry. By its own admission, Defendant possesses "absolute discretionary authority concerning interpretation and determination of benefits and eligibility issues which arise pursuant to the Plan." *See* Def.'s Br. at 10. Nonetheless, this conflict is but one factor of the Court's analysis and the Court must now consider how much weight to give it.

First, the Court finds that Defendant has not "taken active steps to reduce potential bias," which tips the balance toward applying more weight to the conflict. *See Glenn*, 554 U.S. at 117. As noted above, Defendant possesses absolute power over Plaintiff's claim, including sole appellate authority. The same individuals who paid Plaintiff's benefits also voted to suspend them, reviewed his initial claim for reinstatement and reviewed his appeal. Two of the trustees present at all times during Defendant's deliberations were union representatives. *See* Prezioso Aff. at 153, 179.

5

Second, the Court need look no further than Defendant's own briefing papers to identify precisely the type of bias Defendant might hold against Plaintiff. With respect to its interpretation of "disqualifying employment," Defendant admitted the following:

> Notably, one of the motivating reasons for having adopted such work restrictions is so that the non-union company, which is competing in business with the Fund's contributing employers, that pays only minimum wage, or thereabout, cannot attract experienced skilled employees who can only reasonably accept such low paying work because they are receiving supporting income from the pension fund. The Pension Fund does not exist to support low wage paying, non-union companies.

Def.'s Br. at 20. Defendant's words speak for themselves. Clearly, Defendant is incentivized to find Plaintiff's Kellogg employment as "disqualifying employment" under the Rules because such a determination restricts the labor pool of competing non-union companies. Accordingly, the Court applies appropriate weight to Defendant's conflict. Nonetheless, the Court must still give deference to Defendant unless it finds that Defendant's interpretation of the Rules was unreasonable. *See Dowling*, 871 F.3d at 250 ("The conflict may 'act as a tiebreaker when other factors are closely balanced,' or it may mean little at all, depending on other factors at play." (quoting *Glenn*, 554 U.S. at 117).

### iii. Defendant is not entitled to summary judgment because there is a genuine dispute as to whether Plaintiff's Kellogg employment "is or may be" under the jurisdiction of the union.

Defendant submits that Rule 6.10(a)(i) governs the instant case, which provides for the suspension of a monthly benefit "for any month in which the Participant is employed in disqualifying employment before he has attained Normal Retirement Age." Def.'s Br. at 17. The Rule defines "disqualifying employment" as "employment with a Contributing Employer; or self-employment in the same or related business as any Contributing Employer; or employment or self-employment in any business which is or may be under the jurisdiction of the Union." *Id*. The first two prohibitions plainly do not apply to Plaintiff: Kellogg is not a Contributing Employer and Plaintiff is not self-employed. The only question before the Court is whether Plaintiff's Kellogg employment "may be under the jurisdiction of the Union."

The term "jurisdiction" is not defined anywhere in the Rules. In support of its interpretation, Defendant offers the affidavits of two of the trustees who voted to suspend Plaintiff's benefit. *See* Aff. of R. Malarchik ¶¶ 1, 5, 10, ECF No. 9-2; Aff. of R. Milmoe ¶¶ 1, 8, ECF No. 9-3. As a threshold matter, the Court notes that neither of these affidavits are part of the administrative record. *See* Prezioso Aff. at ¶ 2 ("Attached . . ., constitutes the record that was presented to the Trustees during their deliberation and decision-making."). "[T]he record for arbitrary-and-capricious review of ERISA benefits denial is the record made before the plan administrator, and cannot be supplemented during the litigation." *See Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 (3d Cir. 2010) (quotation

and citation omitted). Accordingly, the Court will not consider the trustees' affidavits as evidence in this case.

Consequently, the Court is left with Defendant's conclusory argument that the work of a Merchandiser falls under the "jurisdiction of the Union." First, the Court finds the term "jurisdiction of the Union" to be ambiguous. The Rules provide no examples of the types of jobs that fall under the "jurisdiction of the Union" nor do they provide any guiding parameters of where the union's jurisdiction begins or ends. Ostensibly then, the term means whatever the trustees say it means. "If plan language is ambiguous, a plan administrator is authorized to interpret it, so long as the plan administrator's interpretation of the document is reasonable." *Bd. of Trs. of Plumbers & Pipefitters Local Union No. 9 Welfare Fund v. Drew*, 445 F. App'x 562, 570 (3d Cir. 2011). The question the Court must answer now is whether Defendant's interpretation of "jurisdiction of the Union" is reasonable with respect to the work of a Merchandiser.

In his appeal of Defendant's suspension decision, Plaintiff juxtaposed the duties of a Wonder Bread Route Salesman with those of a Kellogg Merchandiser. *See* Prezioso Aff. at 171. The Court finds the following differences noteworthy. First, Plaintiff delivered daily baked goods from Wonder Bread's facility to retail stores using a company vehicle, whereas Plaintiff made no such deliveries for Kellogg and used his own car for transport to retail stores. Second, Plaintiff was responsible for sales of Wonder Bread products to the retail stores in which he worked, including ordering those products for the stores, whereas he had no sales responsibility of any kind for Kellogg. Third, Plaintiff's Wonder Bread employment was a full-time, salaried position with benefits, whereas his Kellogg employment was a part-time position with an hourly wage and no benefits. *Id*.

Defendant does not dispute the accuracy of any of these differences. Instead, in its first denial letter, Defendant stated that Plaintiff's Kellogg employment constituted "disqualifying employment" under the Rules because "Kellogg Company is in the same or related business as other contributing employers to the Plan." *See id*. at 156. The Court easily dismisses this rationale because it does not meet any of the three prohibitions stated under the governing definition of "disqualifying employment," which Defendant identifies as the controlling language here. *See* Def.'s Br. at 17. The Rule prohibits "*employment* in any business which is or may be under the jurisdiction of the Union." *See id*. (emphasis added). Under the plain text of the Rule, the type of employment requires scrutiny, not the company.[2] *See id*.

Defendant's second denial letter underscores this critical distinction, wherein it altered its denial rationale. Defendant stated, "In your letter of appeal, you note that your current job is packing and delivering food for Kellogg's. In this regard, *delivering* food to

---

[2] For example, if Plaintiff had been employed as a janitor at Kellogg where his duties entailed cleaning bathrooms and mopping floors, the Court finds it highly unlikely that Defendant would argue that Plaintiff engaged in "disqualifying employment." The Court would also find such an interpretation unreasonable.

7

retail establishments is work that is within the jurisdiction of the Union." *See* Prezioso Aff. at 182 (emphasis added). Defendant argues that "delivering food" includes the work of a Merchandiser because it involves the food products' "transport from the store's backroom to the retail store shelves." *See* Def.'s Br. at 19–20. Defendant admits that the work "does not involve transport from a warehouse to the store." *See id*. at 19.

The Court finds Defendant's rationale unreasonable. First, nowhere in the administrative record (or otherwise) does Plaintiff say that he delivered food from a Kellogg facility to a retail store. It is undisputed that Plaintiff, as a Merchandiser, simply took Kellogg's products from the back room of a retail store and arranged them on the shelves in the front of the store. Defendant's argument that taking a product from one part of a store to another part constitutes "delivering food" is not credible.

Second, there is no evidence anywhere in the administrative record that Defendant actually deliberated on the other differences between Plaintiff's Wonder Bread employment and his Kellogg employment. The minutes of the board meetings indicate that the trustees discussed Plaintiff's suspension, but they do not indicate the reasoning behind the trustees' conclusions. *See* Prezioso Aff. at 154, 180. Defendant's letters to Plaintiff are equally silent on the trustees' deliberations. *See id*. at 156–57, 182–83. The Court finds the employment differences significant, particularly the full-time versus part-time nature of the jobs and the salaried versus hourly nature of compensation. Of course, the biggest differences are the facts that Plaintiff never delivered food from a Kellogg facility to retail stores and he never organized the sale of Kellogg's products to retail stores. These facts plainly contradict the only potentially credible reason in the administrative record that Defendant gave to Plaintiff for his benefit suspension: "*delivering food to retail establishments* is work that is within the jurisdiction of the Union." *See* Prezioso Aff. at 182 (emphasis added).

In light of the inconsistencies in the record, the Court finds that Defendant's conflict of interest weighs against deference to Defendant's decision-making. *See Dowling*, 871 F.3d at 250 ("The conflict may "act as a tiebreaker when the other factors are closely balanced . . . ." (citing *Glenn*, 554 U.S. at 117)). Accordingly, the Court finds that Defendant's position that Plaintiff's Kellogg employment disqualifies him from his pension benefit is unsupported by the administrative record. Consequently, Defendant's motion for summary judgment is **DENIED**.

### B. Plaintiff's Motion for Summary Judgment

Plaintiff makes two arguments in favor of summary judgment. First, Plaintiff argues that Defendant's decision violated ERISA's anti-forfeiture provisions, namely 29 U.S.C. § 1053(a)(3)(B)(ii). *See* Pl.'s Mem. at 4–6. The Court easily dismisses this argument because the provision to which Plaintiff cites only applies to plan participants who have reached normal retirement age. *See* 29 U.S.C. § 1053(a) ("Each pension plan shall provide that an employee's right to his normal benefit is nonforfeitable *upon the attainment of normal retirement age . . . .*" (emphasis added)); *see also* 29 C.F.R. § 2530.203–3(a) ("A

plan may provide for the suspension of pension benefits which commence prior to the attainment of normal retirement age . . . ."). The normal retirement age of the Pension Fund is 65, which Plaintiff has not yet reached.

Second, Plaintiff argues that Defendant's decision was arbitrary and capricious. Plaintiff submits, in part, that the reason given by Defendant for its denial of his appeal was unsupported by the administrative record because "there is no information in the record showing that Plaintiff was even delivering food for the Kellogg company."[3] *See* Pl.'s Mem. at 7. For the reasons stated above, the Court agrees. *See supra* Part III.A.iii. In addition, as stated above, the Court finds Defendant's shifting rationales for its decision, the absence of specificity of the trustees' deliberations, the significant differences in employment responsibilities, and Defendant's clear conflict of interest to be evidence of its abuse of discretion in suspending Plaintiff's benefits. Accordingly, the Court concludes that Defendant abused its discretion in suspending Plaintiff's pension benefit. For this reason, Plaintiff's motion for summary judgment is **GRANTED**.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is **DENIED** and Plaintiff's motion for summary judgment is **GRANTED**. An appropriate order follows.

 */s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 5th, 2017**

---

[3] Plaintiff makes three other disjointed and confusing arguments as to why Defendant's decision was arbitrary and capricious, which the Court finds irrelevant and need not address.